UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CHARLES T. MASTERS,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No. 2:17-cv-00905-JAD-BNW<br><br>**REPORT AND RECOMMENDATION** |

The case involves review of an administrative action by the Commissioner of Social Security ("Commissioner") denying Plaintiff Charles T. Masters' ("Plaintiff's") application for disability insurance benefits under Titles II and XVI of the Social Security Act. The court reviewed Plaintiff's Motion for Reversal and/or Remand (ECF No. 16), filed October 2, 2017, and the Defendant's Cross-Motion to Affirm and Response to Plaintiff's Motion for Reversal (ECF Nos. 17, 18), filed October 31, 2017. Plaintiff did not file a reply. This case was reassigned to the undersigned magistrate judge on May 3, 2019, and was referred for a report of findings and recommendations under 28 U.S.C. § 636(b)(1)(B)-(C) and Local Rule IB 1-4.

**I.　BACKGROUND**

　　**A.　Procedural History**

On September 18, 2013, Plaintiff applied for disability insurance benefits and on October 9, 2013, filed for supplemental security income under Title II of the Act, alleging an onset date in both applications of February 1, 2011. AR[1] 163-165, 166-173. Plaintiff later amended his alleged

---

[1] AR refers to the Administrative Record in this matter. (Notice of Manual Filing (ECF No. 15).)

disability onset date to September 1, 2012. AR 43. The Commissioner denied Plaintiff's claims by initial determination on June 3, 2014. AR 106-109. Plaintiff requested reconsideration, which was denied on August 26, 2014 by the Commissioner. AR 110-115. A hearing was then held before an Administrative Law Judge (ALJ) on October 23, 2015. AR 40-65. On November 12, 2015, the ALJ issued a decision finding Plaintiff was not disabled. AR 21-39. On December 11, 2015, Plaintiff requested that the Appeals Council review the ALJ's decision. AR 19-20. The Appeals Council denied this request on January 30, 2017, making the ALJ's decision the final decision of the Commissioner. AR 1-7. Plaintiff, on April 7, 2017, commenced this action for judicial review under 42 U.S.C. §§ 405(g). (See Compl. (ECF No. 4).)

### B. The ALJ Decision

The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920.

At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity since September 1, 2012. AR 26.

At step two, the ALJ found that Plaintiff had the following severe impairments: lupus, degenerative disc disease of the lumbar spine, degenerative disc disease of the cervical spine, hypertension, chronic fatigue/pain syndrome, status-post left ankle/tibia/fibula fracture, healed with residual pain, and depressive disorder. *Id.*

At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R., Part 404, Subpt. P, App. 1 (the listings). AR 27.

Next, the ALJ found Plaintiff retained the residual functional capacity (RFC) to perform light work with some exceptions. AR 29. Specifically, the ALJ found that Plaintiff could perform light work, except that he required a sit/stand option (i.e. the ability to alternate between sitting and standing at up to 30-minute intervals), was limited to occasional postural activity, but no climbing of ladders, ropes, or scaffolds, and was limited to simple, repetitive tasks (i.e. unskilled work). *Id*. The ALJ also evaluated Plaintiff's statements about the allegedly disabling nature of

his impairments and found that they were not credible to the extent that they conflicted with ALJ's RFC-finding. AR 30.

At step four, and with the assistance of a vocational expert, the ALJ concluded Plaintiff could not perform his past relevant work as a welder. AR 32, 59-60.

At step five, and with the assistance of the vocational expert, the ALJ found that there were jobs existing in significant numbers that someone with Plaintiff's vocational profile could perform. AR 33-34. The ALJ therefore found Plaintiff "not disabled" as defined in the Act. AR 34.

## II. DISCUSSION

### A. Standard of Review

Administrative decisions in social security disability benefits cases are reviewed under 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) states:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides.

42 U.S.C. § 405(g). The court may enter "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.* The Ninth Circuit reviews a decision affirming, modifying, or reversing a decision of the Commissioner de novo. *See Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2004).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *see Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193. When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue before the court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence. It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are insufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). The ALJ's findings "should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based . . . ." *Id.* (*citing Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974), cert. denied, 420 U.S. 931 (1975).).

**B.     Disability Evaluation Process**

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. §

404.1514. If the individual establishes an inability to perform his/her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See generally* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that he can make a finding of disability or nondisability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. *Id.* § 404.1572(a)-(b). If the individual is engaged in SGA, then a finding of "not disabled" is made. *See Barnhart*, 540 U.S. at 24. If the individual is not engaged in SGA, then the analysis proceeds to step two. *See id.* Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. *Id.* § 404.1521; *see also* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); SSR 85-28, 1985 WL 56856 (Jan. 1, 1985).[2] If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of "not disabled" is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

---

[2] SSRs constitute the SSA's official interpretation of the statute and regulations. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1). They are entitled to some deference if they are consistent with the Social Security Act and regulations. *Id.* at 1223-24 (finding ALJ erred in disregarding SSR 82-41).

Step three requires the ALJ to determine whether the individual's impairment or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the individual's impairment or combination of impairments meet or equal the criteria of a listing and the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made. 20 C.F.R. § 404.1520(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

Before moving to step four, however, the ALJ must first determine the individual's residual functional capacity (RFC), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1520(e); *see also* SSR 96-8p, 1996 WL 374184 (July 2, 1996). In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and "the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a*); see also* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and 20 C.F.R. § 416.927.

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work (PRW). *See* 20 C.F.R. § 404.1520(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years before the date that disability must be established. *See* 20 C.F.R. §§ 404.1560(b), 404.1565(a). In addition, the work must have lasted long enough for the individual to learn the job and performed a SGA. *Id.* §§ 404.1560(b), 404.1565(a). If the individual has the RFC to perform her past work, then a finding of "not disabled" is made. *Id.* §

404.1560(b)(3). If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual can do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). If she can do other work, then a finding of "not disabled" is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Yuckert*, 482 U.S. at 141-42.

### C.     Analysis

#### 1.     Medical Opinion Evidence

##### i.     Drs. Devera and Torigoe's Opinions

Plaintiff faults the ALJ for rejecting the opinions of Drs. Devera and Torigoe about Plaintiff's alleged social limitations. (ECF No. at 6-11.)

On May 2, 2014, Dr. Devera performed a mental status exam of Plaintiff. AR 446-452. Dr. Devera diagnosed Plaintiff with unspecified depressive disorder, ruled out (R/O) adjustment disorder with depressed mood. AR 451. As is relevant here, Dr. Devera opined that Plaintiff's "ability to interact appropriately with supervisors, co-workers and the public may be limited. While he was cooperative and friendly, affect was depressed and slower processing speed was observed." *Id*.

On August 24, 2014, non-examining state agency physician Dr. Torigoe reviewed Plaintiff's file. AR 84-102. As is relevant here, Dr. Torigoe opined that Plaintiff "is able to interact appropriately in brief, casual encounters with the public and coworkers; and to be able to respond appropriately to nonconfrontational feedback and supervision. The working environment should limit continuous and prolonged contact with others." AR 100.

##### ii.     The ALJ's Decision

The ALJ gave Drs. Devera and Torigoe's opinions some weight, except with regard to the above-quoted statements concerning social functioning, which he gave little weight. AR 29.

                                     **iii.    When a Doctor's Opinion May Be Rejected**

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss,* 427 F.3d at 1216. An ALJ may reject a non-examining physician's opinion by reference to specific evidence in the medical record. *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).

"However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted); *Thomas,* 278 F.3d at 957 (same rule). Furthermore, an ALJ may reject an opinion that does "not show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity." *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999).

                                   **iv.    Whether the ALJ Erred in Rejecting Drs. Devera and Torigoe's Opinions**

First, the ALJ provided clear and convincing reasons based on substantial evidence in the record for rejecting both Dr. Devera and Dr. Torigoe's social limitation opinions. Specifically, the ALJ found that Plaintiff had only mild difficulty with social functioning and cited the following facts in support of this determination: Plaintiff reported no problems getting along with family, friends, neighbors, and others; Plaintiff testified that he visited friends, family, and neighbors; and he reported he could initiate and maintain friendships. AR 27 (citing Exs. 4E/6; 7E/6; 15F/5). The ALJ also noted that during Plaintiff's examination with Dr. Devera, Plaintiff was cooperative and rapport was easily established. AR 28; *see also* AR 448. And while Plaintiff at times had a depressed affect during his examination with Dr. Devera, he was also able to laugh and joke at other times. AR 29; *see also* AR 448. Accordingly, the ALJ found that "the record does not support" the social limitations Drs. Devera and Torigoe opined about. This finding was not error. *See Bayliss,* 427 F.3d at 1216 (ALJ provided clear and convincing reason supported by

substantial evidence for rejecting doctor's statement about plaintiff by noting that doctor's statement was contradicted by other notes in his own report).

Second, even if this substantial evidence did not exist, the ALJ was not required to accept either Drs. Devera or Torigoe's social-limitation statements about Plaintiff, as they were brief, conclusory and inadequately supported by clinical findings. *See Thomas,* 278 F.3d at 957 (ALJ properly rejected doctor's unsupported statements about plaintiff'). Additionally, neither doctor explained how Plaintiff's symptoms translated into specific deficits that limited Plaintiff's ability to work with others. *Morgan*, 169 F.3d at 601 (ALJ properly rejected doctor's unsupported statements about plaintiff's social limitations, because doctor did not explain how plaintiff's observed characteristics precluded him from working, and ALJ cited specific examples from the record showing plaintiff retained social skills).

Here, Dr. Devera concluded that Plaintiff's ability to interact appropriately with supervisors, co-workers, and the public may be limited but did not explain why or how Plaintiff's symptoms (e.g. depressive affect) led to this conclusion. *See* AR 451. Instead, her report seems to contradict this conclusory statement by noting that Plaintiff was cooperative; rapport was easily established; he was also able to laugh and joke at times; and he was able to initiate and maintain friendships. AR 448, 450.

Dr. Torigoe concluded that Plaintiff's "working environment should limit continuous and prolonged contact with others" but also does not explain why. *See* AR 100. And his report similarly seems to contradict this conclusory statement by noting that "[p]sychological--evidence indicates he could sustain simple tasks, and could interact with others appropriately in relation to work functions." AR 93. He also specifically noted that Plaintiff had no social interaction limitations. AR 99.

Accordingly, the ALJ did not err in rejecting the conclusory, seemingly unsupported, and unexplained conclusions of Drs. Devera and Torigoe about Plaintiff's alleged social limitations.[3]

---

[3] Plaintiff also notes (in one paragraph) that there is an apparent conflict between two of the jobs the ALJ found Plaintiff had the RFC to do and the "reasoning level" required for those jobs. (EFC No. 16 at 10.) Specifically, Plaintiff notes that para-mutual salesperson and toll collector require a

### 2. Symptom Claims

#### i. Plaintiff's Appealed Symptom Claims

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing and supported by substantial evidence in discrediting his symptom claims. (ECF No. 16 at 11-15.) Plaintiff alleges that the ALJ improperly rejected his pain and symptom testimony related to his joint, hip, back, hand, ankle, and Lupus-related pain. (*Id*.) The ALJ addressed why he did not find Plaintiff's symptom claims regarding his ankle fracture credible, and separately, why he did not find his lupus, degenerative disc disease of the lumbar and cervical spine, and chronic fatigue/pain syndrome credible, as discussed in more detail below. AR 30.

#### ii. When Symptom Claims May Be Rejected

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.[4] "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the

---

"reasoning level" of three as defined in the Dictionary of Occupational Titles, and the Ninth Circuit has held that Level 3 Reasoning conflicts with a limitation to simple, repetitive tasks (to which Plaintiff was limited). (*Id.* (citing *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015).)) The court expresses no opinion on whether there is a conflict in this case under *Zavalin,* because even if there was, the ALJ also found that Plaintiff had the RFC to be a parking-lot attendant, which requires a reasoning level of two. *See* AR 33; DOT 915.473-101 (parking-lot attendant requires a reasoning level of two). And the ALJ further found that the "number of jobs for *any one* of these [three] occupations, *including the parking lot attendant* position with the fifty percent erosion, are each significant *by themselves*." AR 33 (emphasis added). Plaintiff does not challenge this finding. Accordingly, any alleged error related to Plaintiff having the RFC to be a para-mutual salesperson or toll collector was harmless.

[4] SSR 96-7p, the regulation that governed credibility determinations at the time of this decision, was superseded by SSR 16-3p in March 2016. SSR 16-3p "eliminat[es] the use of the term 'credibility' .... [to] clarify that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, available at 2016 WL 1119029, at *1 (Mar. 16, 2016). However, both regulations require an ALJ to consider the same factors in evaluating the intensity, persistence and limiting effects of an individual's symptoms. *See id*. at *7; SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996).

claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *Thomas*, 278 F.3d at 958 ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.").

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

The court is constrained to affirming the ALJ decision on a ground that the ALJ invoked in making his/her decision. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Stout v. Comm'r, Soc. Sec. Admin*, 454 F.3d 1050, 1054 (9th Cir. 2006). The court cannot affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

### ii. Whether the ALJ Erred in Rejecting Plaintiff's Ankle Symptom Claims

Plaintiff broke his left ankle in May of 2013. AR 30. He underwent surgery and had hardware placed in his ankle during the procedure. *Id.* At the hearing in 2015, Plaintiff testified that his ankle was "getting worse" and he thought he had to schedule an appointment to remove the plates and screws, as they were unexpectedly becoming loose inside his ankle. AR 50-51. A medical record dated September 2, 2015 indicates that Plaintiff's range of motion in his left ankle

was abnormal, "hardware is prominent and bulges the skin with redness[] and mild tenderness," and the doctor discussed sending Plaintiff to an orthopedist to potentially have the hardware removed. AR 581-582; *see also* AR 504 (medical record dated 12/16/14 indicates range of motion in left ankle is abnormal, area is tender). Nonetheless, the ALJ discredited Plaintiff's ankle-related symptoms because in July 2013, Plaintiff reported no pain, and in September 2013, an examination of his ankle was unremarkable. AR 30.

These reasons are not clear and convincing reasons to reject Plaintiff's testimony about his ankle-related pain. Plaintiff's unremarkable medical reports indicating that the Plaintiff was not in pain in 2013 do not alone provide a logical reason for rejecting Plaintiff's testimony and medical records in 2015. It is entirely possible that Plaintiff's pain and symptoms changed over two years, especially given that he had hardware in his ankle that may have moved. *See* AR 504; 581-582. Accordingly, the ALJ erred by failing to provide clear and convincing reasons to reject Plaintiff's ankle-related symptom claims.[5] The court therefore will recommend that this case be remanded for further proceedings regarding Plaintiff's ankle-related symptom claims.

### iii. Whether the ALJ Erred in Rejecting Plaintiff's Other Symptom Claims

Plaintiff testified that he had pain in his back, hips, joints, and hands that interfered with his ability to work. AR 47-50. The ALJ explained why he did not find this testimony credible. AR 30. Specifically, he noted that Plaintiff's treatment was routine and conservative, generally consisting of follow-up visits every three months. *Id.* (citing Exs. 5F; 9F; 13F; 16F; 18F; 24F). Plaintiff also reported to his doctors on multiple occasions that medications helped control his pain and lupus, and that he was stable and doing fine. *Id.* (citing Exs. 13F at 9; 18F at 39, 42, 45; 24F at 17).

These are clear and convincing reasons for rejecting Plaintiff's testimony. *See Valentine v. Comm'r, Soc. Sec. Admin*, 574 F.3d 685, 693 (9th Cir. 2009) (ALJ properly pointed to specific

---

[5] It is worth noting that the ALJ may have inadvertently overlooked the 2015 medical records because Plaintiff's counsel, at the hearing, specifically pointed the ALJ to exhibits that contain 2013 records only. *See* AR 51.

evidence in the record that undermined plaintiff's symptom claims); *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (upholding ALJ's credibility determination when he pointed out numerous lab results that contradicted plaintiff's subjective complaints, as well as claimant's conservative treatment). The ALJ's credibility analysis was supported by substantial evidence, and it is entitled to great deference. *See Parra*, 481 F.3d at 750 (questions of credibility and resolution of conflicts in the testimony are functions solely for the agency).

### III. CONCLUSION AND RECOMMENDATION

Accordingly, IT IS THEREFORE RECOMMENDED that Plaintiff's motion to reverse and/or remand (ECF No. 16) be GRANTED in part and DENIED in part.

IT IS FURTHER RECOMMENDED that this case be remanded for further proceedings regarding Plaintiff's ankle-related symptom claims.

IT IS FURTHER RECOMMENDED that the Commissioner's cross-motion to affirm and response to Plaintiff's motion for reversal (ECF Nos. 17, 18) be DENIED.

### IV. NOTICE

This report and recommendation is submitted to the United States district judge assigned to this case under 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation may file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: August 16, 2019

BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE